UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RODNEY DEWAYNE JOHNSON,

        Plaintiff,

v.                                        Case No: 5:19-cv-205-Oc-60PRL

G. MILLER, et al.,[1]

        Defendants.

_____

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.    Status**

Plaintiff, a state prisoner being housed in the federal prison system, is proceeding on a pro se Amended Civil Rights Complaint (Doc. 9) against Assistant Warden G. Miller, Captain Dunbar, S.I.S. Lieutenant Goodman, Lieutenant Wilson, Officer Ertel, Warden Lockett, Assistant Health Service Administrator Mezyk, and four John Doe officers.[2] Plaintiff alleges that he was assaulted by staff and denied medical treatment until eleven days after the incident when he had to be rushed to the hospital.

Before the Court is a Motion to Dismiss filed on behalf of Defendants Miller, Dunbar, Goodman, Wilson, Ertel, Lockett, and Mezyk (Doc. 28).[3] Defendants argue

---

[1] Defendants advise that the proper spelling of Defendant Mzek's surname is Mezyk. *See* Doc. 28 at 1 n.1. The **Clerk** shall update the docket accordingly.

[2] The Court previously dismissed the claims against R.C. Cheatham. *See* Order (Doc. 11).

[3] The John Doe officers have not been served with process, because Plaintiff has not provided sufficient identifying information. *See* Order (Doc. 12) at 1 n.1; Order (Doc. 18) at 1 n.1.

that Plaintiff failed to exhaust his administrative remedies; Defendant Mezyk is entitled to absolute immunity as a United States Public Health Service officer; Defendants Dunbar, Mezyk, and Lockett are entitled to qualified immunity because Plaintiff fails to state a claim against them; and all official capacity suits under *Bivens*[4] are due to be dismissed. The Court advised Plaintiff that the granting of a motion to dismiss would represent an adjudication of this case which may foreclose subsequent litigation on the matter and provided Plaintiff with an opportunity to respond to the Motion. *See* Order (Doc. 18). Plaintiff filed a Response (Doc. 31) and a Declaration of another inmate (Doc. 32). At the Court's direction, Defendants filed a Reply (Doc. 37). The Motion is ripe for review.

## II.   Motion to Dismiss Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) ("[O]n a Rule 12(b)(6) motion, we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." (internal quotations and citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of

---

[4] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). The Court liberally construes a pro se plaintiff's allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

### III. Discussion

As explained herein, the Court finds that Plaintiff failed to exhaust his administrative remedies before filing this case. Because exhaustion is a precondition to suit, the Court need not address Defendants' other arguments as this case is due to be dismissed without prejudice for Plaintiff's failure to exhaust.

#### A. Governing Legal Authority Regarding Exhaustion

An inmate must first exhaust all available administrative remedies before filing any claim under *Bivens*. *See* 42 U.S.C. § 1997e(a). But a prisoner is not required to plead exhaustion. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.* The defendant carries the burden of showing a failure to exhaust. *Id.* at 212. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA

exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Pozo*,[5] 286 F.3d, at 1024. . . .

*Woodford*, 548 U.S. at 90. And "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

*Ross v. Blake*, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate has properly exhausted his available administrative remedies is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. *Bryant*, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that this Court must employ when examining the issue of exhaustion.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for

---

[5] *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).

> failure to exhaust. 541 F.3d at 1082.[6] First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082-83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015); *see Pavao v. Sims*, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

The BOP provides an internal grievance procedure for its inmates. *See* 28 C.F.R. § 542.10, *et seq.* Generally, a prisoner must complete a three-step sequential process if the informal resolution procedures fail to resolve the issue.[7] As to the formal grievance procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 form to the Warden within twenty days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an

---

[6] *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008).

[7] A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *See* 28 C.F.R. § 542.13(a).

appeal on the BP-11 form to the General Counsel within thirty days of the Regional Director's response. *See id.*

### B. Parties' Positions

Defendants acknowledge that Plaintiff filed some administrative remedies, but argue that he failed to properly complete the BOP's multi-step process. In support of their position, Defendants filed the Declaration and Certification of Records by Kenneth Richardson, a Staff Attorney at the Federal Correctional Complex in Coleman, Florida (FCC Coleman). *See* Doc. 28-1. Mr. Richardson declares in pertinent part:

> Inmate Rodney Johnson, Federal Register number 33846-007, is a federal inmate currently designated to the United States Penitentiary Thomson, in Thomson, Illinois. At the time of the alleged incident, he was housed at FCC Coleman, USP-I, in Coleman, Florida.
>
> Computerized administrative remedy records maintained by the Bureau reveal that Inmate Johnson has filed five (5) administrative remedies during his incarceration with the Federal Bureau of Prisons.
>
> Inmate Johnson filed remedy #955629-F1 at the institution level on October 3, 2018. He alleged that on June 1, 2018 staff assaulted him while he was restrained. He also stated he did not receive timely medical care between the date of the incident and June 12, 2018.
>
> On October 11, 2018, the Warden signed the administrative remedy and the following codes were entered; CLO, and XPL. This indicates that the remedy was accepted and closed with an explanation. In this instance, Inmate Johnson was told his allegations would be investigated, but he would not be told of the results. He was informed that if he was not satisfied with the response he could appeal to the next level. He was advised if he were seeking monetary damages for neglect

of duty, he would need to file an administrative tort claim.
. . .

Inmate Johnson filed his appeal at the regional level on October 22, 2018. On November 23, 2018, the following codes were entered; REJ, LEG and RSR. This indicates the administrative remedy was rejected (REJ) because it was not legible (LEG). He was informed he should resubmit (RSR) his appeal with legible copies. Inmates are usually given ten (10) days to refile. In this instance, Inmate Johnson never refiled at the regional level.

Instead of re-filing at the regional level, Inmate Johnson filed directly to the Central Office level. That remedy was received on January 28, 2019, as remedy #955629 A-1. It was initially erroneously accepted, and a second remedy response designated as #955629 A-2 was generated. On February 19, 2019, the following codes were entered; WRL, DIR, and OTH. This indicates Inmate Johnson's remedy was filed at the wrong level (WRL) and that Inmate Johnson should follow the directions given to him by the region (DIR/OTH).

Pursuant to policy, the Bureau does not keep copies of rejected administrative remedies.

Inmate Johnson failed to re-file his appeal at the regional level. There are no records establishing Inmate Johnson exhausted his constitutional claim of excessive force or his alleged deliberate indifference to his medical needs allegations.

Inmate Johnson filed an administrative tort claim, TRT-SER-2019-00959, which was received by the institution on October 11, 2018. He alleged constitutional claims and was informed these were improperly brought as a tort claim. Plaintiff also alleged that medical staff fail[ed] to provide proper medical care. His claim was investigated and denied on April 10, 2019.

Doc. 28-1 at 3-4 (internal citations and paragraph enumeration omitted). Mr. Richardson attached pertinent exhibits to his Declaration.

According to Plaintiff in his Response, he "filed all necessary administrative remedies for his constitutional claims and was denied on all levels." Doc. 31 at 10. He later states that his "unit team . . . denied him his right to exhaust his administrative remedy by denying him the administrative remedy documents" in retaliation "for the incident that happen[ed] at USP Coleman-1." *Id.* at 10-11. He acknowledges that he received the response to his BP-10, advising him that his remedy was illegible and directing him to resubmit it. *Id.* at 11. Plaintiff claims that he received this remedy "two days before he could be time barred," and that when he complained about getting the response back late, "his unit team . . . said they couldn't do nothing about it." *Id.* He states that he asked his unit team "for another BP-10 which he was denied and the unit team walked off." *Id.* Plaintiff alleges that "[a] few day[s] later after [he] tried on numerous occasions to get another BP-10 form so he could file his remedy[,] all staff at USP Coleman-2 den[ied] him." *Id.* at 12. "Plaintiff then ask[ed] another inmate for a remedy form, but that inmate only had a BP-11." *Id.* "Plaintiff filed at the central office level at around 1-28-19, [yet he] never received a response to his BP-11 which [D]efendants claim that [he] did receive a response." *Id.* He asserts that he "tried . . . his best" to properly complete the administrative process, but he was unable to because staff would not provide him with the proper forms. *Id.*

Plaintiff also filed the Declaration of inmate Tony C. Thomas. *See* Doc. 32. Thomas states that he saw Plaintiff provide "a white envelope to officer Rivera at or/around 10:30, 10:45 p.m." sometime in December 2018. *Id.* at 1. Thomas claims

that the white envelope contained BP-8, BP-9, BP-10 and BP-11 forms "regarding physical brutality and battery remedy appeal No. 955629-F1." *Id.* The envelope was addressed to the Central Office. *Id.*

In their Reply, Defendants reiterate that there is no dispute that Plaintiff submitted administrative remedies informally (BP-8), to the Warden (BP-9), at the regional level (BP-10), and at the Central Office (BP-11). Doc. 37 at 4. There also is no dispute that Plaintiff's BP-10 was returned to him because it was not legible and Plaintiff was instructed to resubmit the remedy, but he did not do so—instead he filed the BP-11 at the Central Office. *Id.* Defendants, however, dispute Plaintiff's assertion that his administrative remedies were unavailable to him because staff denied him forms. Defendants argue that "BOP staff provided him the forms necessary to exhaust informally and at the institutional level," he "does not allege that he was in any respect threatened if he pursued the grievance procedure," and he was not deterred from filing remedies as he "subsequently pursued the grievance procedure with the Central Office." *Id.* at 6.

In support of their Reply, Defendants submitted a second Declaration of Mr. Richardson, as well as Declarations of Correctional Counselor Ronald Rodriguez, Correctional Counselor Gwendolyn Bailey, and Unit Manager Jeffrey Smith. *See* Docs. 37-1 to 37-4. Mr. Richardson avers that "[i]nmates are provided the necessary documents to file their administrative remedies by Bureau staff, primarily their unit team. However, if an inmate needs a form expeditiously they can ask any staff member for the necessary form(s) and their request will be handled as quickly as

possible." Doc. 37-1 at 2. He further declares that when "a remedy is rejected[,] the entire remedy is sent back to the inmate so that they can correct any issues that cause[d] the rejection." *Id.* Accordingly, per policy, "the Bureau has no copies to verify any allegations made by the Inmate in his alleged Regional or Central Office remedies." *Id.*

Correctional Counselor Rodriguez states that Plaintiff was housed in the Special Housing Unit (SHU) from June 1, 2018 to October 22, 2019. *See* Doc. 37-2 at 2. Rodriguez further declares in pertinent part:

> [E]ach unit team member conducts weekly SHU rounds. While conducting rounds, each unit team member carries a folder containing several types of documents an inmate in SHU may need, to include several copies of blank BP-8, BP-9, BP-10, and BP-11 administrative remedy forms. If an inmate requests any form to include an administrative remedy, protocol is to provide them with the requested form.
>
> As previously mentioned, I do remember Inmate Johnson, and I also remember him asking for several blank administrative remedy forms during his time in SHU. I provided any form that he requested. I also remember providing several responses to his administrative remedies to him as well, as those are delivered to the Unit Team for delivery to the inmate. I do not recall Inmate Johnson ever complaining to me that he was having difficulty filing his administrative remedies.
>
> Inmate Johnson also state[s] in his complaint of a situation where he received his administrative remedy two days before the appeal due date. I do not remember this specific situation; however, if any inmate receives their remedies response late, staff will provide a memo explaining why a remedy or an appeal is late, if necessary. Inmate Johnson never requested from me, a

> memo explaining a late administrative remedy or a late appeal.

*Id.* at 2-3 (paragraph enumeration omitted).

Correctional Counselor Bailey also describes the rounds staff members make in the SHU, and adds that the administrative remedy forms "can be requested from any unit team member, and there are also several other Bureau staff members not part of the unit team who also make[] rounds [and] can provide any forms an inmate might request." Doc. 37-3 at 2-3. Finally, Unit Manager Smith provides similar averments, but also notes that an inmate can report any denial of forms to the Warden, Associate Warden, Captain, or SHU Lieutenant, and/or can "file their remedy without the form, explaining that they were denied the proper forms." Doc. 37-4 at 2-3.

### C. Analysis

Plaintiff acknowledges that he received the response advising him that his BP-10 was illegible and directing him to resubmit it. He claims that the unit team would not provide him with a BP-10 form, thus rendering his administrative remedies unavailable. He did, however, eventually obtain a BP-11 form from another inmate, which he submitted. The BOP records attached to Mr. Richardson's first Declaration show that on February 19, 2019, the Central Office advised Plaintiff to "make corrections as noted by region and resubmit to regional level." Doc. 28-1 at 16. Plaintiff claims, however, that he never received this response. Taking Plaintiff's assertions in the Response as true, dismissal is not warranted at the first step of the *Turner* exhaustion analysis. The Court proceeds

to the second step and makes specific findings of fact to resolve disputed issues related to exhaustion.

Defendants have carried their burden of showing that Plaintiff failed to properly exhaust his available administrative remedies. Defendants have shown that the process was available to Plaintiff and that staff members routinely make rounds and provide inmates with requested forms, but that Plaintiff failed to properly utilize and complete the administrative process. Plaintiff, however, in vague and conclusory terms, alleges that "staff retaliat[ed] against him," and the "unit team" and "all staff" would not provide him with another BP-10 form. Doc. 31 at 11-12 ("[P]laintiff ask[ed] for another BP-10 which he was denied and the unit team walked off"; "[P]laintiff tried on numerous occasions to get another BP-10 form so he could file his remedy all staff at USP Coleman-2 deny him").

The Supreme Court has delineated three circumstances that may render administrative remedies unavailable:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes... incapable of use... [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 136 S.Ct. at 1859-60). The Eleventh Circuit has held:

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in

> good faith a grievance make the administrative remedy
> "unavailable," and thus lift the exhaustion requirement as
> to the affected parts of the process if both of these
> conditions are met: (1) the threat actually did deter the
> plaintiff inmate from lodging a grievance or pursuing a
> particular part of the process; and (2) the threat is one
> that would deter a reasonable inmate of ordinary
> firmness and fortitude from lodging a grievance or
> pursuing the part of the grievance process that the inmate
> failed to exhaust.

*Turner*, 541 F.3d at 1085.

As Defendants suggest, it is implausible that staff would provide Plaintiff with a BP-8, a BP-9, and a BP-10 form and the responses thereto, but then refuse to provide him with an additional BP-10 form when his first was returned as illegible. Moreover, Plaintiff does not allege that he was never able to obtain a BP-10 form or that he even continued to try after another inmate gave him the BP-11 form.[8] Although Plaintiff knew that he needed to resubmit a BP-10 form and that his submission of a BP-11 would not properly complete the process, he does not address why he did not seek an extension of time to file a BP-10 form or whether he advised the officials on the BP-11 form of his difficulty in obtaining a BP-10 form. While Plaintiff does not have to grieve a breakdown in the administrative process, he had available to him various ways to properly complete the process.

Additionally, Plaintiff's allegations in the Amended Complaint contradict the allegations in his Response. In the Amended Complaint, Plaintiff avers that he submitted a BP-9, BP-10, and BP-11. Doc. 9 at 7. He states that in response to the

---

[8] Albeit several months later and after this case was filed, around May 7, 2019, Plaintiff submitted a BP-10 regarding a "DHO hearing date 4-23-19." Doc. 28-1 at 17.

BP-9, he was told to file a tort claim, and that his BP-10, BP-11, and tort claim were all denied. *Id.* On the contrary, in his Response, he acknowledges that his BP-10 was rejected because it was not legible and he needed to resubmit it. *See* Doc. 31 at 11. As outlined above, Plaintiff then states that he was denied a BP-10 form, but he acknowledges that he was eventually able to obtain a BP-11 form from another inmate, which he submitted around January 28, 2019, but he claims that he never received the response. *Id.* at 12. Plaintiff's contradictory assertions, coupled with the fact that he was able to file administrative remedies before and after the alleged denial of a BP-10 form, render his assertion that the process was unavailable to him because he was denied a BP-10 form incredible.

Finally, while Plaintiff states in a conclusory fashion that he was denied a BP-10 form in "retaliation," he fails to support that conclusion with any facts. He does not allege that he was threatened in any way. Even assuming the alleged denial of a BP-10 form was done in retaliation, according to Plaintiff, he continually attempted to obtain a BP-10 form from staff and other inmates, and he subsequently lodged a BP-11 form regarding the claims raised in this case with the Central Office. Upon review, the Court finds that Plaintiff fails to allege "a serious threat of substantial retaliation" that deterred him from lodging an administrative remedy or from pursuing any part of the administrative remedy process, or that would deter a reasonable inmate from doing so.

Defendants have carried their burden of showing that Plaintiff failed to properly exhaust his available administrative remedies. Plaintiff has not shown

that the administrative process was unavailable to him under any of the three circumstances delineated in *Ross*, nor has he sufficiently alleged that his remedies were objectively and subjectively unavailable under *Turner*.[9]  Thus, this case is due to be dismissed for Plaintiff's failure to exhaust.[10]

Accordingly, it is

**ORDERED:**

1.   Defendants' Motion to Dismiss (Doc. 28) is **GRANTED to the extent** it seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies.

2.   This case is **DISMISSED without prejudice**.

3.   The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of January, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

---

[9] *See Geter*, 974 F.3d at 1356 ("While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him."); *Wright v. Georgia Dep't of Corr.*, 820 F. App'x 841, 845 (11th Cir. 2020) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (recognizing that after a defendant carries his burden of showing a plaintiff failed to exhaust, the burden shifts to the plaintiff to show that the remedies were unavailable to him).

[10] This finding is equally applicable to the claims against the John Doe Defendants. *See generally Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 & n.2 (11th Cir. 1990) (recognizing that a district court may dismiss a case under 28 U.S.C. § 1915 if it "sees that an affirmative defense would defeat the action").

JAX-3 1/27
c:
Rodney D. Johnson
Counsel of Record